(No. 5399-

Joseph Krieger, Claimant, *vs*. State of Illinois, Respondent.

*Opinion filed December 18, 1969.*

Morgan, Brittain, Ketcham and Imming, Attorneys for Claimant.

William G. Clark, Attorney General; Morton L. Zaslavsky and Bradley M. Glass, Assistant Attorneys General, for Respondent.

Bookwalter, J.

This is a claim for nursing services allegedly rendered to Public Aid recipients during the months of January and February of 1966 in the Hampshire Nursing Home, Hampshire, Illinois. Claimant received $959.60 from the Department of Public Aid, but is seeking to recover the additional amount of $2,297.76. The essential facts are not in dispute.

Joseph Krieger, claimant, was the owner and operator of the Hampshire Nursing Home during 1965 and 1966. Sometime prior to October, 1965, the Department of Public Aid placed twelve Public Aid recipients in the Hampshire Nursing Home at the rates of between $190.00 and $225.00 per month, which were set by the Department of Public Aid. At the time the patients were placed in the home it was fully licensed with the Department of Public Health of the State of Illinois.

The right to operate a nursing home in the State of Illinois, and the manner in which it is operated is controlled by statute: Ch. 111½, Sec. 35.16 thru Sec. 35.17, Ill. Rev.Stat., 1969. This statute provides in Sec. 35.17 that no person shall operate a nursing home unless he is duly licensed by the Department of Public Health.

Claimant's license was subject to renewal on October 4, 1965, but, because of various failures to comply with minimum standards set by the Department of Public Health, the license was not immediately renewed. As of October 4, 1965, claimant did not shut down his nursing home even though he was operating without a license, nor was he ordered to close by the Department of Public Health.

During a period from October 4, 1965, to February 15, 1966, claimant sought to bring the Hampshire Nursing Home up to the minimum standards required by the Department. The Department, through an inspection conducted on February 15, 1966, determined that the nursing

home did meet its minimum standards. Claimant's attorney received the following letter from the Department of Public Health under date of March 4, 1966:

"Thank you for your March 3rd letter transmitting copies Nos. 1 and 2 of the application for renewal of the home's license. Enclosed please find the renewal certificate Annual No. NH 1448, which renews nursing home license No. NH 1448 for the period October 4, 1965, to October 4, 1966. It was determined by Mrs. Wiener, Miss Heide and Mr. Wilson during their February 15, 1966, inspection that the home did meet minimum licensing standards.

We certainly appreciate your cooperation."

As the letter indicates, the Department considered the license as being effective from October 4, 1965. On May 11, 1966, however, the Department of Public Health sent a letter to claimant indicating that the statement, "which renews nursing home license No. NH 1448 for the period October 4, 1965, to October 4, 1966," was not meant to imply retroactive approval.

Claimant, upon payment of the required $50.00 fee, was issued a renewal certificate, which is effective for a period of one year. The expiration date appearing on this certificate issued by the Department of Public Health was October 4, 1966.

It is the opinion of this Court that, from the fact of the record and from a careful reading of the statute involved, the license issued to the Hampshire Nursing Home should be considered effective as of October 4, 1965. Both the renewal certificate and the letter of the Department of Public Health made it plain to claimant that the license was to run from October 4, 1965, to October 4, 1966. The agency clothed with the power to grant, revoke, reissue and renew licenses for nursing homes saw fit on March 4, 1966, to renew claimant's license for the period October 4, 1965, to October 4, 1966.

The Department of Public Aid pays for care provided Public Aid recipients in facilities subject to licensing only

when the facility is currently licensed by the Department of Public Health. (See Ch. 23, Sec. 3.2, Ill. Rev. Stat., 1969, and Rule 7.03.2 of the Department of Public Aid.)

The Department of Public Aid's refusal to play claimant for nursing services rendered during January and February of 1966 was based on the fact that claimant's license had not been renewed. However, the Department had paid claimant for the services rendered from October 4, 1965, to January 1, 1966, and they at no time attempted to remove the recipients, whom they had placed in the hospital, even though a demand was made to do so by claimant. At no time, according to the testimony given, did the Department of Public Aid object to the treatment and care given Public Aid patients in the nursing home.

Since this Court has held the effective date of the license to be October 4, 1965, and has found that the nursing services were rendered by claimant's nursing home, there is no longer a statutory bar to payment by the Department of Public Aid for services rendered by claimant's nursing home. It is, therefore, the judgment of this Court that claimant be awarded the sum of $2,297.76.